■ JAMES R. MEADOWS et al., Respondents, v AMSTED INDUSTRIES, INC., Appellant, and G&R MACHINERY AND EQUIPMENT CO., INC., et al., Respondents, et al., Defendant. [760 NYS2d 604] —Appeal from that part of an order of Supreme Court, Erie County (Mahoney, J.), entered January 7, 2002, that denied the motion of defendant Amsted Industries, Inc. for summary judgment dismissing the complaint against it.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed with costs.

Memorandum: Plaintiffs commenced this action seeking damages for injuries sustained by plaintiff James R. Meadows at his workplace when the cutter/rammer head on a vertical boring mill came loose from its track and fell on him. The mill was manufactured between 1942 and 1944 by King Machinery

Tool Company (King). In 1948, substantially all of King's assets were transferred to the corporate predecessor of defendant Amsted Industries, Inc. (Amsted). Following that transaction, King was dissolved and the Elmes and King Division of Amsted's predecessor was formed, in part with the assets formerly owned by King. That division continued thereafter to manufacture vertical boring mills under the King trade name. In 1961 Amsted sold substantially all of the assets of its Elmes and King Division to an entity known as Flug and Strassler. Following the 1961 transaction, Amsted has continued in existence, despite discontinuing its manufacture, supply and distribution of vertical boring mills, replacement parts and accessories. Against Amsted, the complaint alleges causes of action sounding in strict products liability and negligence, specifically alleging that the liability of Amsted is based on its status as successor in interest to King, the manufacturer of the mill. Supreme Court properly denied the motion of Amsted seeking summary judgment dismissing the complaint against it.

A corporation that acquires the assets of another corporation generally is not liable for the torts of its predecessor unless "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations" (*Schumacher v Richards Shear Co.,* 59 NY2d 239, 245 [1983]; *see Hartford Acc. & Indem. Co. v Canron, Inc.,* 43 NY2d 823, 825 [1977]; *Sweatland v Park Corp.,* 181 AD2d 243, 245 [1992]). In support of its motion, Amsted did not address any of the four *Schumacher* exceptions in relation to Amsted's predecessor's acquisition in 1948 of the assets of the manufacturer. Instead, Amsted contended that only one of the four exceptions, i.e., the "mere continuation" exception, applies to its successor, Flug and Strassler, in relation to the 1961 transaction. Specifically, Amsted contends in its brief on appeal that, "as a mere continuation of Elmes and King after its 1961 purchase, Flug and Strassler is the ultimate successor in interest to Amsted" and thus must bear liability for any alleged defect in the King vertical boring mill.

Contrary to Amsted's contention, Flug and Strassler could not be the "mere continuation" of Amsted inasmuch as Amsted has continued in existence since the 1961 transaction (*Schumacher,* 59 NY2d at 245; *see Mitchell v Suburban Propane Gas Corp.,* 182 AD2d 934, 935 [1992]; *Sweatland,* 181 AD2d at 245;

*see also Subramani v Bruno Mach. Corp.,* 289 AD2d 167 [2001]). In any event, given its failure to address all potential bases for the imposition of liability against it as a successor to the manufacturer, Amsted has not sustained its burden of demonstrating its entitlement to judgment as a matter of law and thus the court properly denied its motion (*see generally City of New York v AAER Sprayed Insulations,* 281 AD2d 228, 229 [2001]; *Drexler v Highlift, Inc.,* 277 AD2d 196, 197 [2000]; *Burgos v Pulse Combustion,* 227 AD2d 295 [1996]; *Sweatland,* 181 AD2d at 245-246). On this record, we conclude that there are triable issues of fact, particularly with regard to whether there was an express or implicit assumption of liability by Amsted's predecessor as part of the 1948 transaction, whether the 1948 transaction was a consolidation or a de facto merger of King and Amsted's predecessor, and whether Amsted's predecessor, or subsequently Amsted itself, was a "mere continuation" of King following the 1948 transaction. Present—Pine, J.P., Hurlbutt, Kehoe, Gorski and Hayes, JJ.