■ Ambac Assurance Corporation et al., Respondents, v Countrywide Home Loans, Inc., et al., Defendants, and Bank of America Corp., Appellant. [57 NYS3d 111]—

Orders, Supreme Court, New York County (Eileen Bransten, J.), entered October 27, 2015, which denied defendant Bank of America Corp.'s (BAC) motion for summary judgment dismissing plaintiffs' (together, Ambac) successor-liability claims, and granted Ambac's motion for partial summary judgment on the continuity of ownership prong of the de facto merger claim, unanimously modified, on the law, to deny Ambac's motion and to grant BAC's motion as to the implied assumption of liabilities claim, and otherwise affirmed, without costs.

Ambac, the insurer of a number of residential mortgage-backed securitizations originated by the Countrywide defendants (collectively, Countrywide), seeks to impose successor liability for fraud and breach of contract in connection with the securitizations upon BAC, which acquired substantially all of Countrywide's assets through a series of transactions that Ambac contends amounted to a de facto merger. Specifically, Ambac alleges that BAC acquired Countrywide in a transaction where Countrywide's shareholders became shareholders of BAC. Ambac further alleges that BAC subsequently integrated Countrywide's assets, through asset purchase agreements, so that Countrywide's former shareholders continued to have an interest in those assets through their interests in BAC's stock.*

"[C]ontinuity of ownership is the touchstone of the [de facto merger] concept and thus a necessary predicate to a finding of a de facto merger" (*Matter of TBA Global, LLC v Fidus Partners, LLC*, 132 AD3d 195, 210 [1st Dept 2015] [internal

---

* In determining the question of de facto merger, we apply New York law. Although BAC is correct that the court erred in giving preclusive effect to its ruling in a prior case on the question of which state's law of de facto merger should apply (*see MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 40 Misc 3d 643 [Sup Ct, NY County 2013]), BAC does not argue on appeal that the law of a state other than New York should apply under a choice of law analysis. Nor in response to a question at oral argument did BAC state that it was challenging the motion court's decision to apply New York law.

quotation marks omitted]). Continuity of ownership "exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction" (*Matter of New York City Asbestos Litig.*, 15 AD3d 254, 256 [1st Dept 2005]). "Stated otherwise, continuity of ownership describes a situation where the parties to the transaction become owners together of what formerly belonged to each" (*id.* [internal quotation marks omitted]).

Contrary to BAC's contention, neither *New York City Asbestos Litig.* nor *TBA Global* limits continuity of ownership to only those situations where the shareholder interests are acquired in the same transaction as the asset sale. Rather, if the shares are acquired "as an element of the asset purchase transaction[,]" continuity of ownership may exist (*TBA Global*, 132 AD3d at 210 n 16; *see Fitzgerald v Fahnestock & Co.*, 286 AD2d 573 [1st Dept 2001]; *Arnold Graphics Indus., Inc. v Independent Agent Ctr., Inc.*, 775 F2d 38, 42 [2d Cir 1985] ["there is no requirement that all of the events that are necessary to a finding of de facto merger occur at the same time"]). Here, issues of fact exist as to whether, based on the multi-step transactions, Countrywide shareholders acquired ownership interests in BAC "as an element of" the subsequent asset purchases. Ambac points to evidence showing that BAC embarked upon the series of transactions as an integrated whole, that BAC began planning the asset sales before Countrywide shareholders acquired BAC stock, and that BAC always anticipated a transaction whereby BAC would acquire the assets of Countrywide.

We agree with BAC that there can be no continuity of ownership where the asset seller receives fair value consideration for its assets (*see TBA Global*, 132 AD3d at 210 ["The purpose of requiring continuity of ownership is to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability" (internal quotation marks omitted)]; *New York City Asbestos Litig.*, 15 AD3d at 258 ["the underlying rationale for imposing liability on a successor by merger (is) to ensure that a source remains to pay for the victim's injuries" (internal quotation marks omitted)]). Although BAC maintains that it paid fair value for Countrywide's assets, Ambac points to evidence showing that large amounts of money Countrywide received in the asset sale were then cycled back to BAC and its subsidiaries. Thus, issues of fact exist as to whether the

transactions were coordinated with the goal of combining BAC's and Countrywide's mortgage businesses while avoiding Countrywide's liabilities so as to benefit Countrywide's former shareholders at the expense of its creditors.

The motion court should have dismissed the implied assumption of liabilities claim. The asset purchase agreements include an express disclaimer regarding the assumption of the Countrywide liabilities at issue here. Further, the agreements provide that they can only be amended by a writing signed by each party. Thus, there can be no implied assumption of liabilities based on post-contractual statements or conduct that falls short of a new written contractual undertaking (*see Oorah, Inc. v Covista Communications, Inc.*, 139 AD3d 444, 445 [1st Dept 2016]).

Since there is evidence consistent with the claim that BAC dominated and controlled Countrywide post-acquisition with respect to decisions that would have affected creditors like Ambac, the court correctly declined to dismiss the fact-laden alter-ego claim (*see Ledy v Wilson*, 38 AD3d 214 [1st Dept 2007]). Concur—Richter, J.P., Manzanet-Daniels, Gische, Webber and Kahn, JJ.